"A"

In the United States District Court

For the District of Rhode Island
(Form mailed 3-18 ,2005

Kevin M Lyons

/Enter above the full mane of the plaintiff or plaintiffs in this action. /

v.-

Civil Action No. ____________

Ashbel T Wall

Ms F Ruggeiro

/Enter above the full name of the defendant or defendants in this action/

1.- Previous Lawsuits

A. Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

Yes / / No XX/

B. If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of ~~paper, using the same outline.)~~

1. Parties to this previous lawsuit

Plaintiffs: N/A

Defendants: ____________

2. Court /if federal court, name the district; if state court, name the county/: N/A

(1)

3. Docket number: N/A

4. Name judge to whom case was assigned: N/A

5.- Disposition /for example: Was the case dismissed? Was it appealed? Is it still pending?/: N/A

6. Approximate date of filing law suit: N/A

7. Approximate date of disposition: N/A

II. Place of Present Confinement: R.I Department of Corrections

A. Did you present the facts relating to your complaint to The Warden or any of the prison officials?
Yes /XX/ No / /

B. If your answer is YES:

1. What steps dis you take? Wrote letter to Director of medical, after several direct communication with dietician.

2. What was the result?

C. If your answer is NO, explain why not:

III. Parties

/In item A below, place your name in the first blank. Do the same for additional plaintiffs, if any./

A. Name of plaintiff Kevin M Lyons

/ In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, position, and places of employment of any additional defendants./

B. Defendant Ashbel T Wall is employed as Director of R.I. D.O.C. at 40 Howard ave,Cranston,R.I.02920

C. Additional Defendants: Ms F Ruggiero is employed as dietician at R.I.D.O.C. at 35 Howard Ave,Cranston,R.I. 02920

IV. Statement of Claim

State here as briefly as possible the facts of your case. Discribe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. /Use as much space as you need. Attach extra sheet if necessary./

1) Mr Ashbel T Wall is the Director of the D.O.C. in R.I. and is Responsable for the health and welfare of Petitioner and as such is directly responsable for harm cause by his employee.

2) Ms F Ruggeiro did willfully and with malicious intent removed the Petitioner from his physician prescribed allergic diet on the 25 day of February 2005. Telling petitioner to eat around the standard dietary meal to maintain his dietary concerns. Petitioner was diagnosed by R.I. hospital G.I. Clinic after complet test results and Lab results to be allergic to Shell fish and Sea food done in 1997 and 1998. He was placed on a no spice,

(SEE SECONDARY PAGES)

V. Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

Petitioner Prays this court to order the D.O.C. and it's employee's to retain a dietitian to properly institute Petitioner's physician's ~~allergic diet as per the doctor order. In the standard format of~~ 26 weeks (spring/summer),26 weeks(fall/winter) menu's to properly substitute all seafood and shellfish meals with plain meat and all spicy or heavy gravy meals with plain meals because of his allergies and pre-existing medical condition (IBS) also to account for his type 2 diabettes.

2) Petitioner also ask this court to press and compel D.O.C. to fill

(SEE SECONDARY PAGES)

IV,STATEMENT OF CLAIM

No seafood, no shellfish diet by attending physician and concured to by Dr Spaulding ( the Director of Medical R.I.D.O.C.), Whom then adhered to said diet by making Petitioner's diet to substitute all fish and seafood to other meats and that any spicy or heavy sauses to plain meals.

Petitioner never went back to R.I. Hospital G.I.Clinic prior to 25 Feb,2005 never was consulted by any doctor about his diet nor is he aware of Ms Ruggeiro's order from any doctor as to his dietary concerns.

V. Relief

proper paper work (ie. Nutritional Assessment Form), follow all standard practices, in its own policies and to present copies of all signed documentation to the Petitioner.

3) Petitioner also asks this court to grant any other relief it deems appropriate.

VI. NOTE: Should you fail to execute and return this form within ten days from the date of mailing as recorded on pace 1, this Court will conclude you have abandoned your claim and will dismiss your petition.

Signed this 18 day of April, 2005

Kevin M Lyons Pro/Se

#100773 Fl-42,P.O.Box 8274

Cranston,R.I. 02920

/Signature of plaintiff or plaintiffs/

VERIFICATION

State of Rhode Island )
)
County of Providence )

Kevin M Lyons, being first duly sworn, under oath, says: that he is the plaintiff in this action and knows the contents of the above complaint; that it is true of his own knowledge, exceptas to those matters that are stated in it on his information and belief; and as to those matters, he believes them to be true.

Kevin M Lyons PRO/SE
Kevin M Lyons PRO/SE

/Signature of plaintiff

Subscribed and sworn to before me this 18th day of April, 2005.

Exp: 5/31/05

/Notary Public or other person authorized by law to administer an oath/

MEMORANDUM IN SUPPORT OF
COMPLAINT OF PRISON CONDITION'S

The Plaintiff, Kevin M Lyons, does here by aver that he is being denied proper care in regard to his medical needs in his diet, by Ms F,Ruggeiro the Adult Correctional Institution (here after A.C.I.)Dietician. The Plaintiff has seen and conferred with the medical staff at the A.C.I. and by policy has proven he has special medical needs that place him in a No Sea Food and Shellfish diet and should have been placed on a substitute meat, which, he was on until Ms Ruggeiro did remove him without proper authorization on 17 Feb,2005 causing cruel and unusual punishment to the Plaintiff.

## JURISDICTION

This Court has jurisdiction under the 8th Amendment to the U.S. Constitution.

## ARGUMENT IN BRIEF

Plaintiff does aver and will show that Ms Ruggeiro through her office and by authority of A.C.I. Director A.T.Wall has and is causing harm and cruel and unusual punishment to the Plaintiff in their purposeful, denial of medical needs of the Plaintiff and against A.C.I. posted and proper policy's.

## TRAVEL OF THE CASE

Plaintiff was Incarcerated on Feb 23,1996 after a jury trial, He had a pre-existing condition after an operation for gall blatter removal.

Over the next year Plaintiff was having serious medical problems ie... stomach cramps, blood in stool, diarrhea, drastic weight loss and fluxuation, fatigue, trouble sleeping,... He was referred by the A.C.I. medical staff to the R.I. Hospital G.I. Clinic for diagnosis. After several tests; upper GI, lower GI, and Barrium, he was found to have Irratable bowel Syndrome (I.B.S. from here on) and type 2 diabetic.

After conference between R.I. Hospital doctors and A.C.I. staff doctors, Plaintiff was placed on an alternate meat diet and found to be alergic reactional to Shell Fish and Sea food on or about March,1997.

Up until the middle of 1998 Plaintiff's diet was as prescribed and he had no problem then in 1998 the dietician (at the time) was told to have all inmates eat around the planed meal menu and all items were supposed to be seperated on the meal trays but, there were not enough separated areas to do so and things (as in main course) were mixed to be allowed on the food trays.

At this time in 1998 Plaintiff did write to and receive response from Dr Spaulding that he was still to receive his alternate meat no Shell fish and No Sea food days, and that the eating around the menu did not apply to him.

When Ms Ruggeiro did take over as the new dietician some time after 2000, she could not properly give an opinion as to a proper diet for the Plaintiff's problems and due to the new over all A.C.I. menu did place the Plaintiff on a bland diet, with No Sea food, No Shellfish and the Plaintiff continued his alternate meat diet.

On 17 Feb,2005 Ms Ruggeiro did notify both the Plaintiff and the Kitchen Stewards that the Plaintiff was to eat around the main menu and that the Plaintiff was no longer to receive alternate meat.

On 17 Feb,2005 Plaintiff did write to Dr Poshkus about his medical diet with substitute meat and Ms Ruggeiro's orders.

On 23 Feb,2005 Dr Poshkus did acknowleged Plaintiff letter and he will investigate.

On March 1,2005 Plaintiff did write to Dr Poshkus informing him of the D.O.C. Policy's 18.45 (old) and 18.45-1(new) and that he still was in the dark as to his diet.

On 8 March,2005 Plaintiff did see Dr Achindiba and Dr Achindiba did reiterate that Plaintiff was on a no Shellfish, no Sea food diet and that he did not have to eat around it, because it would not be medically sound to do so, and that he (Dr Achindiba) did make an appointment for Plaintiff to see Ms Ruggiero on 9 March 2005, Also on 8 March,2005 Plaintiff did receive a second letter from Dr Poshkus that he was unaware of any such condition of the Plaintiff but that'... until such time, your physician and the R.I.D.O.C. will work together to provide you with an appropriate diet'... The Plaintiff should be tested for allergic reactions for seafood, shellfish.

On 9 March,2005 Ms ruggeiro did inform the Correctional Officer at the dispensary front desk that she did not want to see the Plaintiff, even after Dr Achindiba ordered the appointment.

On 10 March,Plaintiff was informed by the stewards that Ms Ruggeiro told him that day that plaintiff was to eat around the main menu, even after Dr Achindiba on 8 March,2005 did reiterate that the alternate meat diet was still in place for the Plaintiff.

On 17 March,2005 Plaintiff did meet with Dr Poshkus at the medium security dispensary about Plaintiff dietary problem and Dr Poshkus stated that he would be talking to Ms Ruggeiro about my prescribed no Seafood, no Shellfish diet and as far as he concerned Dr Achindiba was right and I should be on the diet and he had no problem with Dr Achindiba diagnosis and order.

On 1 March,2005 Plaintiff did write to Dr Poshkus and informed him that he was still not on his alternate meat diet with no Shellfish, no Seafood and that a steward again informed him that Ms Ruggeiro ordered Plaintiff to eat around the main menu. also that the Plaintiff was in the process of filing this complaint to the Federal Court.

## ARGUMENT IN FULL

Plaintiff does aver that the defendants did willfully and purposefully deny and cause harm to the Plaintiff by cruel and unusual punishment. It is clearly stated and shown in the R.I.D.O.C. policy's 18.45(effective date 7/12/99) and policy 18.45-1 (effective date 10/13/03) that only physicians and or dentists write orders. Since Ms Ruggeiro is neither she has no authorization to write or change a doctor order, unless she has been given that authority by director A.T.Wall (which is still against policy).

Plaintiff has been duly diagnosed by medical starf at the A.C.I. and independly by the RI Hospital G.I. Clinic with I.B.S. and that seafood and Shellfish are a problem to him as prescribed in R.I.D.O.C. policy. He was properly place on a Therapeutic diet which states" no other diet is served until kitchen stewards receive new (written) orders from physicians" again the Plaintiff presses that Ms Ruggeiro is not a physician and is unauthorized to cause the Plaintiff this harm unless authorized by Director A.T.Wall( which is still against policy).

Plaintiff has suffered harm as his proper dietary needs for both I.B.S and diabetes are not being met and is trying through proper channels to correct this purposeful cruel and punishment from becoming a permanent condition of serious harm and to prevent him from becoming a type 1 diabetic, because of malicious intent by Defendants.

In it's clear and concise presentation RI D.O.C. policy 18.45-1 pg 3 of 5 section A,12 " new dietary orders must be signed dated and timed by the treating physician"... Plaintiff states that the order of 8 March,2005 DR Achindiba did order the Plaintiff a no Seafood diet with alternate meat to provide him his medical needs which, Ms Ruggeiro did purposfully choose to change without authorization, unless again Director A.T.Wall did authorize her to do( against D.O.C. policy).

To clearly understand the Plaintiff problem that Ms Ruggeiro has placed him in, on the dinner meal of 25 February, 2005, the main menu called for fish portions w/tartar sause, french fries, cole slaw, bread w/butter, milk. Now we will disect what the Plaintiff can not eat fish portions w/tartar sause, french fries, cole slaw, so the Plaintiff can only eat bread w/butter and milk. Plaintiff is now basically on bread and water which has all ready been classified as cruel and unusual punishment under Federal guide lines. With Plaintiff a type 2 diabetic with I.B.S to go for the next 14 hrs without any food.

It is cleary established in RI D.O.C. policy 18.45-1 on page 4 of 5 #5 "Rarely for food appearing often on the menu, the physician may order an allergy diet [i.e.substitution for item(s) to which inmate is allergic].The physician completes a form allergy Interview form (attachment 1) after interviewing the offender, if appropriate."that the Plaintiff's diet is substitutional because of his allergic reactionalness to Shellfish and Seafood served. So, as stated in said policy the Plaintiff should receive a substitution for those items and the defendants by not adhearing to said policy are causing harm to the Plaintiff.

## CONCLUSION

Wherefore, the Plaintiff has proved in the above memorandum that he has been harmed and continues to be harmed by the Defendants by there actions against him he prays this Court for the following:

1) That the Plaintiff be giving a substitute meat to take the place of all seafood, Shellfish meals for his term of Incarceration.
2) To make out a 26 week spring/ summer, 26 week fall/winter menu for the Plaintiff and be giving a copy of menu to him,
3) That the Defendants Re-Imburse the Plaintiff for all meal foods purchased from the Inmates commissary, filing fees, mail expense's.
4) Admonish orally and in writing Ms Ruggiero, and providing a copy to the Plaintiff.
5) Make Director A.T.Wall and Ms Ruggiero adhere to RI.D.O.C. policy 18.45-1 and fill out properly the "food allergy interview form",and providing a copy to the Plaintiff.
6) And what ever other relief this Court deems proper.

Respectfully Submitted By,

Kevin M Lyons PRO/Se

Kevin M Lyons PRO/Se

3-18-2005

DATE

Kevin M Lyons Pro/Se
Med 1 FL-42
P.O.Box 8274
Cranston,R.I. 02920

Kevin M Lyons
Med 1 FL-42 ID#100773

Dear Mr Poshkus, Feb 17,2005

This letter is to inform you of the need I have to meet with you as soon as you can meet with me. i meet with the dietician tonight, she inform me that i have to eat around the seafood and from this point forward it will not be put on my tray, which it has not been put on my tray. I have always been on a no seafood meals I have always recevied a substitute meat to take the place of the seafood. When the policy came out in 1987 or 1988 by the director of medical Dr Spaulding, I was told at the time I would have to eat around the seafood, after many letter's and outside visit to Rhode Island Hospital it was determined that I would not be eating around the seafood meals I would be giving a substitute meat to replace the seafood. I do not see how my diet needs have changed from 1988 to present the only thing that has change is the staff for the diet and the inmate's who make the diet. I would appreciated if you would check my personnel file's to see what was said in my case when it come to this subject before you come to meet with me. I hope that we can resolve this matter and that I will not have to file in court it will be a very expense cost to the D.O.C.
Thank you for your time in this matter and look forward to meet you inperson as soon as you can.

CC: File

Sincerely,

Kevin M Lyons

# R.I. DEPARTMENT OF CORRECTIONS
# HEALTH CARE SERVICES

## *MEMORANDUM*

**TO:** **Inmate** Kevin Lyons **ID#** 100773

**Facility** J. J. Moran Medium Security Facility

**FROM:** Michael Poshkus, M.D. MP/sa
Acting Medical Program Director

**DATE:** February 23, 2005

**SUBJECT:** **YOUR LETTER OF** February 17, 2005

---

We would like to thank you for your recent letter, which will require some further investigation before we can respond. This office receives a high volume of correspondence, and we want you to know your patience is appreciated while we look into your concerns. I may respond, or I may ask that a member of my health care staff address your concerns directly.

MK/sa/reply by staff

C: J. Marocco
Dr. Achindiba
F. Ruggeiro

Kevin M Lyons
Med 1 FL-42
ID# 100773

RE: Your letter dated Feb 23,2005

Dear Mr Poshkus,

March 1,2005

Sir, I have checked into the RI.D.O.C. Policy 18.45 of 07/12/99 revised as of 10/13/03 on page 3of5 of new policy 18.45-1 it clearly states that shell fish and fish are food allergies. I was diagnosised with this problem by R.I. Hospital in 1998 and as specified on page 4of5 section 5. That a physician may order an "allergy diet"[ie,substitution for items to which inmate is allergic],and that the physician should complete food allergy interview form(attachment#1). Also expanded under 5,a) once form completed, The physician sends copy to dietician who completes pertinent section and sends completed form to medical program director.

I would also aver to 18.45-1 attachment A pg 1of2 states that there are six different therapeutic diets and Ms Ruggeiro did tell me that I was on a **BLAND DIET**,[Section 1)b) States that Bland Diets are house diets without gravies,sauses,spices,high sugar drinks,coffee,fried foods and/or high acid foods],and a no shell fish or sea food diet.

Now, since standard therapeutic Diets and specialized therapeutic diets must be different ie that orders for spe**cialized** diets require licensed physician's diagnosis and order's, as well as supported lab results to justify the need for these diets. This requirement was met by the R.I. Hospital when they stated that I was allergic to shell fish or fish, and the bland diet does not say shell fish or fish any where in its description How am I now on only a bland diet or did she pass a physician and place me on said diet without proper authority , as stated in D.O.C policy 18.45-1 attachment A pg 1of2 section 2 part a): Only a Licensed Physician may order,change or discontinue therapeutic diets.

I now ask you sir if you could rectify this mistake, as even the stewards tried to explain to Ms Ruggeiro that I have always been no seafood Even at that how does one on my diet eat around the friday the 25th day of Feburary 2005 evening meal of fish with tartar sauses on the fish,french fries(fried),coleslaw with bread and butter, and milk eat,when,all but the bread and milk are taboo.

I have tried to be patient but,In the mean time what do I eat. I await word from you sir, and Thank you for your help in this matter.

Respectfully,

[signature]

Kevin M Lyons
Med 1 FL-42
ID# 100773

Dear Dr Poshkus, April 1,2005

I meet with you on March 17,2005, you told me that you would talk to Ms Ruggerio about my diet. As of todays date Ms Ruggerio still has not meet with me. The reason I am writing you today is that when I went to the 4.00 meal, I was inform that Ms Ruggerio left a note for the steward's with my name on it telling them that I am not to get a substitution meat. So I guess that my diet has not been resolved after I meet with you and Dr Achindiba. So at this time I am asking that the proper paper work be fill out as stated in policy 18-45-1 (FOOD ALLERGY INTERVIEW FORM).Once this form is filled out I will need a copy so that I can show the steward if need. If we can not resolved this matter before April 15,2005 I will file my motions in the United States District Court. I hope that it will not come to this. Someone need to inform the steward on what my diet is in writing until this matter is resolved. Thank you for your time in this matter.

Sincerely,

Kevin M Lyons

*Rhode Island Department of Corrections*
*POLICY UNIT*

*TO:* *See Distribution*

*VIA:* *A.T. Wall, Assistant Director*
*Administration*

ATW

*FROM:* AJF *Ann J. Fortin, Chief/Program Development*
*Administration*

*DATE:* *June 8, 1999*

***SUBJECT:*** ***18.45 DOC; DIET; 07/12/99***

---

*The enclosed policy revision, effective 07/12/99, repeals Health Care Services policy # 150.0 and has a 2-fold purpose:*

*A. ensure ~~an~~ adequate diet (which meets federal guidelines) is supplied to all RIDOC inmates; and*

*B. ensure medical and dental diets are provided to offenders, consistent with doctors' orders.*

*Sections II. (Policy) and III. (Procedures) specify responsibilities of the treating or responsible physician or dentist, dietician, stewards, Medical Program Director, and affected offenders.*

***A sample Food Allergy Interview Form is attached to this memorandum to assist in implementing this policy. It is current as of this policy's effective date. The Medical Program Director or designee will ensure affected staff receive copies of updated forms if/when revisions are made.***

***Please ensure obsolete versions of this policy are removed from policy manuals, insert this revision, and bring its contents to the attention of appropriate staff within your units.***

***Persons responsible for implementing the provisions of this policy are also responsible for ensuring adequate supplies of attachments are available for use by staff.***

***This policy IS approved for inclusion in the inmate law library.***

*AJF/gah*
*Enclosure*

*Distribution:*
*Director (original), Assistant Directors (for distribution to affected personnel, including Wardens), Food Services Unit, Legal Counsel, Marshal, Parole Board, Policy Unit, Training Academy*

*cc: J. Marocco*
*J. Rogers*

C:\HEALTH CARE\SECTION F\18.45 DOC\DISMEM

RHODE ISLAND DEPARTMENT OF CORRECTIONS
HEALTH SERVICES

# Food Allergy Interview Form

Patient Name:______________________________ ID #:__________________ DOB:____________

Current Facility:____________________________ Food Allergy:______________________________

1. Physician **Interviewing Patient**______________________________ **Date Seen**____________
Signature

| Chart Review | Y | N | Comments |
|---|---|---|---|
| Allergy mentioned at commitment? | | | |
| History: Describe reaction | | | |
| ER visits for allergy? | | | |
| Hospitalizations? | | | |
| Patient at risk for anaphylaxis? | | | |
| Is further evaluation necessary? (If "no", please forward form directly to Medical Records.) | | | |

Additional comments:______________________________________________________________

__________________________________________________________________________________

__________________________________________________________________________________

2. **Dietician Completing Form**______________________________ **Date Reviewed**____________
Signature

| | Y | N | Comments |
|---|---|---|---|
| Is the history consistent with a food allergy? | | | |
| How often is food item served? | | | |
| How does the allergy interfere with inmate obtaining adequate | | | |

<table>
<tr><td colspan="4">RHODE ISLAND DEPARTMENT OF CORRECTIONS<br>POLICY AND PROCEDURE</td></tr>
<tr><td rowspan="2"></td><td>POLICY NUMBER:<br>18.45 DOC</td><td>EFFECTIVE DATE:<br>07/12/99</td><td>PAGE 1 OF 3</td></tr>
<tr><td>REPEALS:<br>HCS policy # 150.0</td><td colspan="2">DIRECTOR:</td></tr>
<tr><td colspan="2">SECTION:<br>HEALTH CARE</td><td colspan="2">SUBJECT:<br>DIET</td></tr>
<tr><td colspan="4">REFERENCES: NCCHC standard # J-45, diet (important)</td></tr>
<tr><td colspan="4">AUTHORITY: Rhode Island General Laws (RIGL) § 42-56-10(v), Powers of the director</td></tr>
<tr><td colspan="4">INMATE ACCESS THROUGH LAW LIBRARY? X YES</td></tr>
</table>

I. **PURPOSE**:

A. To ensure an adequate diet is supplied to all Rhode Island Department of Corrections (RIDOC) offenders that incorporates the principles expressed in the United States Department of Agriculture/Department of Health and Human Services food guidelines, and meets the current recommended dietary allowances for appropriate age groups.

B. The second purpose is therapeutic: Medical and dental diets are prepared for specially developed menus or in accordance with an approved diet manual and served to offenders according to orders of the treating physician and/or dentist, and/or directed by the responsible physician.

II. **POLICY**:

A. Therapeutic (special) medical and dental diets are prepared from specially developed menus or in accordance with an approved diet manual, and are served to offenders according to orders of the treating physician and/or dentist, and/or as directed by the responsible physician.

B. Regular and therapeutic diets are evaluated for nutritional adequacy by registered or licensed dieticians at least every six (6) months or whenever a substantial change in the menus is made.

C. Copies of the regular and therapeutic diet menus are retained by RIDOC's Food Services Unit (in each facility's kitchen) for the dietician's review along with documentation and variations from the menu as served.

III. **PROCEDURES:**

A. Discussion

1. True food allergies are extremely rare.

2. Individuals who have a true food allergy will usually have some systemic manifestation consistent with allergy within 15 to 30 minutes of ingestion of the substance to which the person is allergic.

   a. The systemic symptoms include laryngeal edema, hives, abdominal pain, bloody diarrhea, and dizziness.

   b. A good history will usually provide one with the diagnosis.

3. Please note that the following items are the items that should be of concern when evaluating for food allergies: nuts, milk, soy, eggs, wheat, shellfish and fish.

4. The RAST (Radioallergosorbent) TEST must be pre-authorized by the Medical Program Director.

B. Physicians and/or dentists write diet orders. Diets are reviewed by a physician at least once every ninety (90) days.

C. The physician communicates life-threatening allergies to the kitchen stewards. Occasionally, for foods appearing often on the menu, the physician may order an "allergy diet".

1. Generally, offenders are instructed to eat around the offending item.

2. If an offender believes the items appear so often [more than five (5) times per week] on the menu that this instruction is not feasible, s/he should submit a slip to be seen at sick call.

a. The physician should fill out a Food Allergy Interview Form after interviewing the patient.

b. The physician sends the form to the dietician, who fills out his/her section of the form.

c. The form is sent to the Medical Program Director, who at his/her discretion, will consult an allergy specialist for additional testing.

d. The Medical Program Director informs Food Services, in writing, that the patient is to be given a special diet.

3. No nuts will be served in the RIDOC menu in order to minimize allergic reactions.

4. Where feasible, sauces will be kept separate (example: tomato sauce, clam sauce) to facilitate eating around offending menu items. When not feasible (i.e., sauce/gravy is a main ingredient – as in American chop suey), the remaining main ingredients (pasta, ground meat) will be available, upon request, consistent with physician/dentist orders.

D. Food preferences are not to be considered a medical condition.

E. Procedures will be developed by Food Services to ensure preparation of adequate therapeutic diets and diets that meet doctor/dentist orders.

**Rhode Island Department of Corrections**
**POLICY UNIT**

**TO:** RIDOC Employees

**VIA:** Ellen Evans Alexander, Assistant Director
Administration

**FROM:** Ann J. Fortin, Chief/Program Development
Administration

**DATE:** September 9, 2003

**SUBJECT:** **18.45-1 DOC; DIET; 10/13/03**

---

The enclosed policy, effective 10/13/03, **repeals policy #'s 18.45 DOC and 16.04 DOC** and ensures adequate diets that incorporate the principles expressed in the United States Department of Agriculture/Department of Health and Human Services' food guidelines and meet the current recommended dietary allowances for specific age groups are supplied to all Rhode Island Department of Corrections (RIDOC) incarcerated offenders.

Section III., Procedures, addresses:

A. General Guidelines
B. Food Allergies
C. Evening Snacks

Definitions of diets that may be utilized at RIDOC are attached to this memorandum to assist in implementing this policy. They are current as of this policy's effective date.

**Persons responsible for implementing the provisions of this policy are also responsible for ensuring adequate supplies of attachments are available for use by staff.**

**Unless otherwise specified, unit/program/facility managers are responsible for ensuring subordinate staff are adequately trained in the contents of this policy.**

**This policy IS approved for inmate/public access.**

/kjl
Enclosure

RHODE ISLAND DEPARTMENT OF CORRECTIONS

HEALTH CARE SERVICES

**Diet Definitions**

1. Standard Therapeutic Diets

   a. House diets are served as standard recipe portions with no restrictions on trays. House diets are the foundation for all diets served at RIDOC. They are at least 2500 calories for men or 2000 calories for women, with no more than 30% of the total calories being comprised of fat, and contain 2-4 grams of salt.

   b. Bland diets are house diets without gravies, sauces, spices, high sugar drinks, coffee, fried foods and/or high acid foods.

   c. No Added Salt (NAS) diets have the same number of grams of salt and calories as house diets; however, no salt is added at the end of cooking. In addition, trays do not contain foods with visible salt (e.g., potato chips), nor are salt packets served on trays.

   d. No Concentrated Sweets (NCS) diets have no sugar by itself, nor are sugar packets served on trays. Standard portions are used to control calories. A Dietician performs calculations to determine the specific quantity of food to be served. Health Care Services staff work with offenders to target calorie, fat, and fiber requests.

   e. Low fat diets contain less than 30% fat with a calorie decrease once the fat has been removed from the tray. Standard portions are used, as determined by the Dietician, as well as decreased quantities of high fat foods.

   f. Calorie Controlled diets consist of 2000 calories (+ or –50) for men or 1500 calories (+ or – 50) for women.

2. Specialized Therapeutic diets (e.g., renal diets) are provided on an individual basis. Orders for specialized diets require licensed physicians' diagnoses and orders, as well as supporting lab results, to justify the need for these diets.

   a. Only licensed physicians may order, change, or discontinue therapeutic diets.

b. The Dietician completes nutritional assessment forms during his/her review of new dietary orders, and forwards his/her recommendations to the treating physician.

c. The Dietician updates the specialized therapeutic diet list as needed. Kitchen staff update the therapeutic list as needed.

d. A physician or Dietician completes an original dietary slip with the offender's diagnosis and includes the physician's signature, date, and time of the order. Copies are filed in the offender's medical record, the Dietician's office, and the kitchen. NOTE: The kitchen's copy does not contain the offender's diagnosis.

3. Texture-Altered diets must be ordered by licensed physicians and/or dentists and should include length of time the diets are needed. Liquid diet orders must indicate either "clear" or "full" liquid.

a. Appropriate Health Care Services staff send dietary slips to the kitchen and the Dietician. The Dietician reviews said slips and advises kitchen staff, who implement appropriate diets.

b. Appropriate licensed physicians and/or dentists review texture – altered diet orders as they see fit.

<table>
<tr><td colspan="4">RHODE ISLAND DEPARTMENT OF CORRECTIONS<br>POLICY AND PROCEDURE</td></tr>
<tr><td rowspan="2"></td><td>POLICY NUMBER:<br>18.45-1 DOC</td><td>EFFECTIVE DATE:<br>10/13/03</td><td>PAGE 1 OF 5</td></tr>
<tr><td>REPEALS:<br>18.45 DOC<br>16.04 DOC</td><td colspan="2">DIRECTOR: Please use BLUE ink.</td></tr>
<tr><td colspan="2">SECTION:<br>HEALTH CARE SERVICES</td><td colspan="2">SUBJECT:<br>DIET</td></tr>
<tr><td colspan="4">AUTHORITY: Rhode Island General Laws (RIGL) § 42-56-10 (22), Powers of the director</td></tr>
<tr><td colspan="4">REFERENCES: NCCHC standards J-45, Diet; P-47 Diet; ACA standard 3-4297 M, Dietary Allowances; 3-4299, Special Diets; National Research Council's Recommended Dietary Allowances and the Dietary Guidelines for Americans (U.S. Dept. of Agriculture, U.S. Dept. of Health and Human Services)</td></tr>
<tr><td colspan="2">INMATE / PUBLIC ACCESS?</td><td colspan="2">X YES</td></tr>
<tr><td colspan="2">AVAILABLE IN SPANISH?</td><td colspan="2">X NO</td></tr>
</table>

I. <u>PURPOSE:</u>

To ensure adequate diets that incorporate the principles expressed in the United States Department of Agriculture/Department of Health and Human Services' food guidelines and meet the current recommended dietary allowances for specific age groups are supplied to all Rhode Island Department of Corrections (RIDOC) incarcerated offenders.

II. <u>POLICY:</u>

A. RIDOC provides all incarcerated offenders in its custody with adequate diets.

B. If needed, medical and/or dental diets are prepared from specially developed menus and/or in accordance with approved diet manuals and served to offenders according to orders of the <u>treating</u> physician/dentist and/or as directed by the Medical Program Director or designee.

C. In addition, special diets are kept as simple as possible and conform as closely as possible to the food served to inmates not requiring special diets.

III. PROCEDURES:

A. General Guidelines

1. In order to minimize allergic reactions, nuts are not served in any RIDOC menus.

2. Where feasible, sauces are kept separate to facilitate eating around offending menu items (e.g., tomato sauce, clam sauce). When not feasible (i.e., sauce/gravy is a main ingredient – as in American chop suey), the remaining ingredients (pasta, ground meat) are available separately, upon request, consistent with physician/dentist orders.

3. Requests for restrictions to diets by offenders without written physicians' orders are not considered valid diet requests, and are not honored.

4. The Dietician reviews all dietary orders at least every six (6) months and makes notes of said reviews in appropriate medical records. In addition, s/he evaluates regular and therapeutic diets every six (6) months for nutritional adequacy or whenever substantial changes are made to the menu.

5. RIDOC's Food Services Unit maintains copies of all regular and therapeutic diet menus and recipes.

6. The Dietician provides descriptions for all therapeutic diets and data on the number of therapeutic diets needed by all kitchens and Correctional Industries to kitchen staff.

7. The Dietician updates appropriate files (in the kitchen) to include all new dietary orders. These updates include offenders' names, current diet orders, and dates of orders.

8. Physicians and/or dentists write diet orders and review said orders at least once every ninety (90) days.

9. Standard sets of written diet descriptions are available through the Dietician.

10. Kitchens serve diets as noted in records for each offender on a therapeutic diet. No other diet is served until Kitchens Stewards receive new (written) orders from physicians.

11. The Dietician must review the dietary order prior to implementation of the order; the physician makes the final decision of the dietary order.

12. New dietary orders must be signed, dated, and timed by the treating physician. The most current dietary order on record is prepared for the offender.

B. <u>Food Allergies</u>:

1. True food allergies are extremely rare.

2. Individuals who have true food allergies usually exhibit some systemic manifestation consistent with an allergy within 15 to 30 minutes of ingestion of the substance to which the individual is allergic.

a. Systemic symptoms include, but are not limited to:

(1) laryngeal edema (swelling of the throat),

(2) hives,

(3) abdominal pain,

(4) bloody diarrhea, and/or

(5) dizziness.

b. The diagnosis is based on a complete medical history.

3. All staff should note the following items are more likely to present serious allergies:

a. nuts,

b. milk,

c. soy,

d. eggs,

e. wheat,

f. shellfish, and/or

g. fish.

4. In cases where food allergies are not life-threatening (i.e., are considered food "preferences"), offenders are instructed to eat around the offending item(s).

   a. If an offender believes the items appear so often [more than five (5) times per week] on the menu that this instruction is not feasible, s/he should submit a slip to be seen at sick call.

5. Rarely, for foods appearing often on the menu, the physician may order an "allergy diet" [i.e., substitution for item(s) to which inmate is allergic]. The physician completes a Food Allergy Interview form (Attachment 1) after interviewing the offender, if appropriate.

   a. Once the form is completed, the physician sends said form to the Dietician, who completes appropriate sections and sends the form to the Medical Program Director.

   b. The Medical Program Director may consult an allergy specialist for additional testing.

   <u>NOTE:</u> The RAST (Radioallergosorbent) test must be pre-authorized by the Medical Program Director.

6. After allergy testing, a final recommendation is made by the physician, who notifies the Medical Program Director. If appropriate, the Medical Program Director informs the Associate Director of Health Care Services or designee, in writing, that the offender is to be given an appropriate diet as determined by the Dietician.

7. Physicians communicate allergies to appropriate Kitchen Stewards through the use of a Food Allergy Interview form (Attachment 1).

   NOTE: The Kitchen Steward's copy of the Food Allergy Interview form does not contain the offender's diagnosis.

C. Evening Snacks

1. Offenders may receive evening snacks only if ordered by a physician.

2. The physician forwards dietary request slips to the Kitchen Stewards and the Dietician.

   a. The Dietitian forwards a list to appropriate facility staff indicating which offenders require evening snacks.

18.45-1 DOC
Attachment 1
Page 1 of 1

RHODE ISLAND DEPARTMENT OF CORRECTIONS
HEALTH CARE SERVICES

## Food Allergy Interview Form

Patient Name:______________________ ID #:______________ DOB:__________

Current Facility:______________________ Food Allergy:______________________

1. **Physician Interviewing Patient**______________________ **Date Seen**__________
Signature

______________________
Printed Name

| Chart Review | Y | N | Comments |
|---|---|---|---|
| Allergy mentioned at commitment? | | | |
| History: Describe reaction | | | |
| ER visits for allergy? | | | |
| Hospitalizations? | | | |
| Patient at risk for anaphylaxis? | | | |
| Is further evaluation necessary? (If "no", please forward form directly to Medical Records.) | | | |

Additional comments:______________________

______________________

______________________

2. **Dietician Completing Form**______________________**Date Reviewed**__________
Signature

______________________
Printed Name

| | Y | N | Comments |
|---|---|---|---|
| Is the history consistent with a food allergy? | | | |
| How often is food item served? | | | |
| How does the allergy interfere with inmate obtaining adequate nutrition? | | | |
| Is it feasible for an inmate to eat around this item or compensate within the week's menu? | | | |

Additional comments:______________________

______________________

______________________

3. **Medical Program Director**______________________ **Date** __________
Signature

______________________
Printed Name

| | Y | N | Comments |
|---|---|---|---|
| Referral to allergist? | | | |
| Letter written to Food Services? | | | |

Comments:______________________

______________________

______________________

cc: Medical Records
Food Services (if necessary)

CERTIFICATION

I, the undersigned, hereby swear and certify that I have mailed a true and correct copy of the foregoing motion's by certified mail to each Defendant listed below:

A.T.WALL Director of A.C.I.
40 Howard Ave
Cranston,R.I. 02920

Ms F,Ruggeiro Dietician
35 Howard Ave
Cranston,R.I. 02920

On the 18 day of APril ,2005

Pro/Se
Pro/Se
Plaintiff Pro/Se

CERTIFIED MAIL RECEIPT NUMBERS ARE LISTED BELOW:

7099 3400 0008 5342 0307 A.T.Wall Director A.C.I.
7099 3400 0008 5342 0314 Ms F Ruggiero Dietician
7099 3400 0008 5342 0321 Federal District Court

# R.I. DEPARTMENT OF CORRECTIONS
# HEALTH CARE SERVICES

## *MEMORANDUM*

**TO:** Kevin Lyons, ID#100773
John J. Moran Medium Security Facility

**FROM:** Michael T. Poshkus, M.D.
Acting Medical Program Director

**DATE:** March 8, 2005

**SUBJECT:** **YOUR LETTER OF MARCH 1, 2005 – FOOD ALLERGY**

---

I have learned that we do not have any documentation that you have a proven food allergy. If you have been tested, we would appreciate it if you could provide us with a copy. If however, you cannot do so, we can arrange for you to be evaluated by your physician, Dr. Achindiba, and be tested to determine if, in fact, you are allergic to seafood/shellfish. Until such time, your physician and the RIDOC will work together to provide you with an appropriate diet.

Please contact me if you feel any of your other medical concerns are not being reasonably addressed.

MP/sa/lyons,kevin3-8-05

C: J. Marocco
Dr. Achindiba
F. Ruggerio